Okay, our next case is number 18-1685, Engineered Corrosion Solutions v. South-Tek Systems, LLC. Okay, Mr. Seidman. Good morning, Your Honors, and may it please the Court. There are three independent reasons that this Court should reverse the Board's final written decision, or alternatively, at least one reason that this Court should vacate and remand the Board's final written decision. First, the Board erred in finding that one of ordinary skill in the art looking to reduce corrosion in an active fire sprinkler system would look to Cahill-O'Brien's disclosure of a method of prolonging the shelf life of fruits and vegetables by altering the atmospheric content of a refrigerator. On appeal, appellees concede that Cahill-O'Brien is not directed to the same field of endeavor as that of the 5-3 patent. Cahill-O'Brien, however, is also not reasonably pertinent to the problem faced by the inventors of the 5-3 patent, that is, reducing corrosion in an active fire sprinkler system. There is no evidence of record because petitioners submitted no expert testimony with the petition, and in their reply declaration, there was no discussion of Cahill-O'Brien, and there was nothing in any of the references that suggest that Cahill-O'Brien is reasonably pertinent to the problem faced by the inventors of the 5-3 patent. This court should therefore reverse because the board's finding that Cahill-O'Brien is analogous art is not supported by substantial evidence. Turning to the claim construction, the board also erred in construing at least one vent operable until the water-based fire protection system is actuated by failing to give meaning to the phrase, until the water-based fire protection system is actuated. Correctly construed, the claim vent is operable until the active water-based fire protection system is triggered to allow water to flow through the pipes and into the system. This can only happen in an active system. There appears to be no dispute among the parties as to the meaning of actuation, that is, in response to an event, such as heat from a fire or smoke allowing a valve to open and water to enter the system. There's evidence from the patent itself that the vent is in an operable system, that is, the patent discloses that the vent allows pressurized nitrogen to escape at a preset or adjustable limit while maintaining the valve in a closed position. ECS also, the patent, excuse me, also provided testimony consistent with this construction that one ordinary skill in the art would understand that the claim requires an active water-based fire protection system. The board erred because it read EPRI's inactive system on this claim limitation. EPRI is inactive and there necessarily cannot actuate. Because the board relied on an incorrect construction, it's obvious that the termination is not supported by substantial evidence and this is the second reason that this court should reverse the board's final written decision. I have trouble understanding this argument. Is this, are you saying the board erred in claim construction or are you saying the board erred in the application of the construction to the references? So, we acknowledge the board did not expressly construe this term, so it was an implicit... Well, it's not even, they didn't expressly, you didn't ask them to. In fact, you said no explicit claim construction was needed of this term. Hello? I think we did dispute that the system was what we called up and running. That's, by the way, not included in the appendix, but I pulled it offline from your full patent under response. You expressly had a title, no construction needed, and that this was one of the terms under the no construction needed portion. I think our position was that under the plain and ordinary meaning it was clear that this did not require a construction, that it was clear that to give meaning to the entire claim term, you didn't need to expressly construe. So you didn't ask the board to construe it at all. In fact, you told the board a construction of it wasn't necessary. So is this a claim construction dispute you're now raising or is it an in-application dispute? I believe it's still both because, well... It becomes a little hard to make a claim construction argument now when below you expressly told the board no construction of this term was necessary. But even in application, EPRI does not disclose an active system and therefore there's no substantial evidence that EPRI can disclose this entire claim limitation. I guess I don't understand. I have a house in the wintertime, we don't use it, and so we blow the pipes with antifreeze. We shut off the water, we blow the pipes. That is absolutely an inactive system during that period of time. But with minimal effort every spring, I can reactivate that system. That system is capable when activated of pushing water through pipes, of doing everything the winter. There's no doubt in the winter, once I shut it off and I drain the pipes and I push antifreeze through those pipes, it's an inactive system. I understand that the inactive system of the accused device is a bit more inactive than my inactive system because I do reactivate mine every year. But it's still a system that if activated would be entirely capable of meeting this limitation. It just happens to be disabled and not in use. But it has all the components there and if activated it would. I don't understand the reading in of the active system limitation into this. That accused system is operable to do everything the claim requires if put in operation. It's just not currently in operation. So there was no evidence of record that this vent, when put into an active system, would operate as required in a water-based fire protection system. We do have a record that EPRI discloses a very, very low supervisory pressure. And our expert provided testimony that the pressures that you would see in a fire protection system are higher than that. Yeah, well that's a fact question now that we would be in a substantial evidence realm to resolve. That's not what you sort of set up claiming it to be a legal question. Correct. So putting aside the claim construction, if you disagree this is a claim construction issue, there still is... Oh no, I don't disagree you've presented it as a claim construction issue. I just disagree that you preserved the claim construction issue. So focusing on the substantial evidence question, I believe there's still not substantial evidence that EPRI's inactive system would be operable in an active water-based fire protection system. And I'd like to point out that in the very beginning, including in the red brief, as far back as the petition, the petitioners have read this phrase entirely on only EPRI and not EPRI plus a system. If you look at the appendix at page 2064, they put forth a claim chart where they state a vent operable until the water-based fire protection system is actuated and they only point to EPRI. They said again in their red brief that this is a limitation not on the system, but on the vent. And there's no evidence here from their expert that this vent would be operable in a water-based fire protection system, be it Viking or any other system. Third, the board also erred in finding that one ordinary skill in the art looking to reduce corrosion in an active water-based fire protection system would look to EPRI's disclosure of maintenance and preservation techniques in an inactive nuclear power plant. Again appellees concede that EPRI is not from the same field of endeavor as that of the 503 patent. Appellees also concede that EPRI is an inactive system. EPRI, however, is also not reasonably pertinent to the problem faced by the inventors of the 503 patent. And that is because EPRI has its own stated objective on the first page of its reference states. It's to provide a reference document outlining preservation and maintenance techniques in a system undergoing layup or other outage. And so in addition to these disparate purposes between the claim invention and the reference, there's also these, there's three structural distinctions that separate EPRI's disclosure from the claim invention. First in the claim system, the pressure is functional. That is, there's a pressure drop that causes the system to actuate. That's not a concern in EPRI's system. Second, if the system is over pressurized, that will slow down the hydraulic delivery. And as Petitioner's own expert explained at paragraph 15 of his declaration, that's a concern in fire sprinkler systems because you need to be able to allow the water to reach all four corners of the network as quickly as possible to respond to a fire emergency. And third, EPRI discloses a non-isolated system where the claim system is isolated. And as a result, one ordinary skill in the art, looking to reduce corrosion in an active fire sprinkler system, in view of the different purposes and structure and function of EPRI relative to the claim invention, would not find EPRI reasonably pertinent to the claim invention. And so this is the third reason that this Court should reverse the Board's final written decision. Turning to the objective evidence, the Board correctly found the nexus between the claimed invention and the evidence of commercial success and skepticism, and Apelli has not disputed that nexus finding here on appeal. It was improper for the Board, however, once it found a nexus, and once it noted this was a novel combination of known elements, to then disregard that finding, that nexus finding, and dismiss this evidence in view of its finding. I don't understand. Let's start with sort of skepticism of the industry. I don't understand them to have dismissed the objective evidence so much as I found them to find it not persuasive because, let's use skepticism as an example, they pointed to EPRI as an example where the industry was not, in fact, skeptical of the idea that systems like the one claimed would operate this way. So I thought that they looked at the evidence. Likewise, for commercial success, they said, you're just talking about sales of nitrogen generators. You're not talking about, that's just speculative about whether that would lead to commercial success in fire protection systems. This isn't the typical case where commercial success is to the whole iPhone or to the whole system. That's just evidence of generators, the nitrogen generators, nothing else. That's only sales of generators. So I understood them to find the evidence deficiently linked to the non-obviousness inquiry in a way that I found quite agreeable, and I'm somebody who likes secondary consideration evidence. So I thought that they sort of evaluated this evidence and said, well, it's very speculative. It's not really on point, and I didn't find them to just dismiss it wholesale. So starting with commercial success, PatentOwner put forth an argument that it sells nitrogen generators and vents solely for the purpose of the fire protection system, and the board found that persuasive to find a nexus between PatentOwner's sales and the claimed invention. But then here, once it was weighing that evidence of commercial success, it effectively made an inconsistent finding, that first nexus finding, by stating that PatentOwner's assertion of commercial success is also based on sales of nitrogen generators, which were a well-known source of pressurized nitrogen. The evidence of success was particular to the fire protection industry. And similarly, turning to skepticism, the board disregarded the skepticism not based on what was actually disclosed in the references or anything else provided by petitioners. It was by what was disclosed in EPRI, which we were separately maintaining, is not even analogous art. So now all of a sudden, we're bringing back in petitioners' obviousness case to have to have that fight again for the purposes of skepticism. If you're wrong about whether it's analogous art, then it's perfectly legitimate for it to be considered in the context that the board considered it in. Your argument is only right if I agree with you on your first argument. Even if EPRI is reasonably pertinent to the problem faced, it's still no dispute from appellee, this is not the same field of endeavor. And so while there may have been some knowledge of EPRI's use of nitrogen elsewhere, appellees are not disputing that this is the same field of endeavor. And so looking at the fire industry, the only evidence of record is skepticism within that industry. It's only once you go elsewhere to find other disclosures that you can allegedly challenge this evidence. If there are no further questions, I'll reserve the remainder of my time for rebuttal. May it please the court, I'd like to address some of the some of the points that were raised by my opposing counsel. First, regarding the Cahill-O'Brien. I think that the evidence is clear that the Cahill-O'Brien is reasonably pertinent to the problem of corrosion. If you're going to treat corrosion with nitrogen gas, which is an inert gas, of course you need a source of nitrogen gas. And the board correctly found that the use of nitrogen in fire sprinkler systems was already known. In fact, that was disclosed by the primary reference, which is the Viking technical brochure. The technical brochure disclosed the use of nitrogen, but did not specify what the source of that nitrogen was. So clearly there was a suggestion in the art for the person skilled in the art to go look for a source of nitrogen gas. The context of Cahill-O'Brien is correct. It's for a refrigerated container for foods. Now, but the the reason that it's relevant is because they are trying to have a controlled nitrogen environment, which is essentially the same problem that they're trying to, it's essentially the same thing they're trying to do in the fire protection system. They want to control the nitrogen environment. So in the case of Cahill-O'Brien, they want to control nitrogen environment. They have the issue, we need to pick a source of nitrogen gas. And they disclosed the use of a nitrogen generator. Anybody else in the field of fire protection systems, they also have to maintain a controlled nitrogen environment. So looking to other applications where nitrogen environments are maintained would be a natural place to look for for art. So I do think that Cahill-O'Brien is reasonably pertinent to the issue of corrosion if you're going to use nitrogen gas and you need a source of nitrogen gas. On the claim construction issue, I don't know what more I need to add. I think Judge Moore did a did a good job pointing out that I don't, I don't believe there was a claim construction at all. I think that the argument about claim construction was just a mischaracterization of the board's holding. I think, in fact, if you go, if you actually read what the board held, it said the claimed vent, talk about the claim, operates only when the system is in standby. That is, waiting for a signal that a fire is present. Clearly the board was not talking about an operational system there. So the board never read that phrase until, until a signal, until, until the system is actuated. That limitation was not read out of the claim. As far as, I think, I think their argument regarding whether or not that vent in the EPRI system is operable, the claim language says it's operable to vent air. And the whole, the whole reason for, for having a vent to vent air was to allow the nitrogen to displace the air so you don't create air pockets or air bubbles in the system where corrosion can occur. Well, that problem, that problem exists in a boiler pipes during layup where the pipes are drained with water. If there's, if you, if there's droplets of water or residual water and you have air in that pipe, you're going to get corrosion. Well, that's the same problem that you have in a fire protection system when it's in standby mode. When no water is flowing through the pipes, there's still low points and joints where water can collect in that system. So if there's air in the system, then you can get corrosion. So the problem of having corrosion in boiler pipes during layup is the same as the problem of corrosion in a fire protection system as far as the vent. The fact that the EPRI system, which he characterizes in an operable, it's not in an operable system, it's a system in storage, which is, which is similar to the system in standby. So, so, and I don't, and even if, so I think the teaching of, of EPRI is highly relevant. In matter of fact, it teaches exactly the solution that, that they have claimed, which is a low nitrogen purge in order to displace air that's in that system. So for the purpose of preventing corrosion, including microbiologically influenced corrosion. There were several comments made about, about pressure. I, I've even heard opposing counsel refer to a limitation of the claim about while maintaining the valve in a closed position. That limitation is not in this claim of this patent. That's in a claim of a different patent. There's nothing in the claim about maintaining supervisory pressure in this system. The purpose of the valve is not to maintain, the only claim limitation is that it's up to to vent air. That allows the nitrogen to displace the air so you can prevent corrosion. As far as the objective evidence, I think the board correctly treated that. We haven't objected to the issue of nexus. I think the board found nexus and then just considered the evidence of wanting. In the case of, in the case of, in the case of commercial success, the, the, I'm not sure the evidence with cells was admissible, but, but what the defendant, what the patent owner did was simply go collect some anecdotal evidence, make a projection based on anecdotal evidence where they'd lumped cells of nitrogen generators, whether or not they were used in connection with the claimed invention. Yes, as, as our counsel said, it was evidence particular to that industry, but not evidence that it was used in the claimed invention. So, so the, so the problem that the board found was, you know, when the board pointed out that, you know, your evidence of sales included cells of nitrogen generators, well, nitrogen generators were used before 2008. And we don't know that there was any increase in cells, you know, before or after. There's nothing to put their cells evidence in contact, context, and no evidence of what their cells were for patented, for, for, for products that were covered by the claims. Was it, was there evidence of nitrogen generator sales for these fire systems as opposed to wholly outside the context? I'm not sure the question, these. I, I, I guess I had understood you to say. Yes. There was evidence of nitrogen generator sales. So maybe that was for something having nothing to do with fire systems, but that you were also saying there are fire systems or suggesting that there are fire systems that use nitrogen generators that this claim wouldn't read on. Is that true? Correct. It's the latter is what I meant. And there was evidence of that? I believe the evidence was for sales to the fire sprinkler market. I don't think that, I don't think the evidence was that it was necessarily used in the claimed invention. For example, the claimed invention is for a pre-action sprinkler system. It does not cover dry pipe sprinkler systems. So a nitrogen generator could be used in a dry pipe sprinkler system, which would not be covered by the claim. So they just lumped all sales to the fire sprinkler market, and, and they, and these fire, and these nitrogen generators could also be used. Their, their own expert testified that he used nitrogen generators in a system without a vent, which again would not be covered by the patent. So we have no way to, to make any judgment about what this says about the claimed invention, because they lumped or they lumped sales of non, of things that are not covered by the patent with sales that are covered. So it's impossible to segregate those out. Okay, anything further? I, I guess I just want to put on the record regarding the SAS. In the case that the board finds that there's a need for a remand, of course we would ask for a remand on all of, all of the issues. Though in the, in the opening brief, the opposing counsel had asked for a remand, wasn't specific, didn't, did not say that they wanted a remand only on that one specific issue. So we didn't rely, we didn't think there was an issue. I think it has since been raised in their reply brief. So we wanted the record to be clear that we would ask for a remand on all issues. Okay. Thank you, Mr. Bennett. Mr. Saban. So briefly on the point of Cahill-O'Brien, I think that opposing counsel is collapsing here, the gram factors. I think first and foremost, you can look at whether or not Cahill-O'Brien is within the scope and content of the prior art. And that only then can you look to whether the differences between the claimed invention and the prior art. And so even if this court finds the board, even if it's persuasive that nitrogen generators were already known, Cahill-O'Brien was used for more than just nitrogen generators. The dependent claims, it was used for other features like oxygen sensors and specific type of nitrogen generators. And so the problem of whether Cahill-O'Brien is analogous art still needs to be addressed. With regard to Ypres as analogous art, nothing that opposing counsel has stated about why Ypres as analogous art is in the record. Again, because there was no declaration with the petition, and the reply declaration only included three limited paragraphs that were not to those points. And so that is why the board's finding that Ypres as analogous art is not supported by substantial evidence. With the objective evidence, it appears again to be challenging. The nexus, the board found the nexus between the sales of the nitrogen generators and vents by the patent owner and the claimed invention. So that was already established in the nexus prong. Once that was established, it was proper for the board to weigh that evidence and not revisit the nexus prong under the same considerations. If there are no further questions, we respectfully request this court reverse for any of the three reasons discussed, or alternatively vacate and remand the further instructions to properly weigh the evidence of secondary considerations. Thank you. Okay, thank you Mr. Sedeman. Thank both counsel. The case is submitted.